```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

IN RE:                                      MEMORANDUM AND ORDER

KIND LLC "HEALTHY AND ALL NATURAL"
LITIGATION                                  15-MD-2645 (NRB)
                                            15-MC-2645 (NRB)

This Document Relates to All Actions

----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

This case arises out of a challenge to the labelling on certain snacks sold by KIND LLC ("KIND"). Plaintiffs are individuals who purchased KIND products displaying an "All Natural/Non GMO" label, who allege that the label was deceptive or misleading.[1] This label was discontinued by 2017. While plaintiffs initially challenged numerous claims that appeared on the labels of KIND products, the only issue remaining in this litigation is whether certain KIND products are properly described as "All Natural." Plaintiffs seek damages on behalf of themselves and three classes, pursuant to New York's General Business Law ("GBL") §§ 349 and 350; California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

---

[1]     "GMO" is an abbreviation for "genetically modified organism."

1

Fla. Sta. § 501.201, et seq.; and various common law claims. Presently before the Court are: (1) defendant's motion for summary judgment; (2) defendant's motion to decertify the classes; and (3) Daubert motions from both plaintiffs and defendant to disqualify each of the five experts in this case, who testify in support of and opposition to the motion for summary judgment.[2]  For the following reasons, defendant's motion for summary judgment is granted, defendant's motions to disqualify the opinions of Dr. Dennis and Dr. Toutov are granted, defendant's motion to decertify the classes is granted, and the remaining motions are denied as moot.[3]

---

[2]    Specifically, defendant challenges plaintiffs' experts, Dr. J. Michael Dennis, who opines on a reasonable consumer's understanding of "All Natural" and whether the "All Natural" statement was material to consumers, ECF No. 241; Dr. Anton Toutov, who opines on the naturalness of the ingredients in KIND products, ECF No. 244; and Dr. Stephen Hamilton, who opines on whether consumers were injured by the "All Natural" statement, ECF No. 254. Plaintiffs challenge defendant's experts Dr. Ran Kivetz, ECF No. 275, who opines in opposition to Dr. Dennis's and Dr. Hamilton's reports, and Dr. Catherine Adams Hutt, ECF No. 269, who opines in opposition to Dr. Toutov's report.

[3]    The parties also submitted briefing regarding whether this Court should consider the supplemental declarations of plaintiffs' experts Stephen Hamilton, J. Michael Dennis, and Anton Toutov submitted in connection with the pending motion for summary judgment. ECF Nos. 297, 303.  Defendant contends that these declarations contain new expert opinions from plaintiffs' experts that were undisclosed in discovery and should therefore be stricken.  ECF No. 297. Plaintiffs contend that these declarations simply "reinforce" the opinions the experts previously offered.  ECF No. 303.  The Court agrees with defendant, but finds that, regardless of whether this Court considers the supplemental expert declarations, the Court's conclusions regarding the admissibility of the expert opinions in this action and the merits are unchanged.  As such, the issue is moot.

# I.   Background

## A.   Procedural History

The present multidistrict litigation ("MDL") has been pending since 2015.  Its history is entwined with certain actions of the Food and Drug Administration ("FDA") regarding particular labelling statements.  A brief overview of the history of this action and the FDA action prior to the present motions is therefore necessary.

### 1.   The FDA Warning Letter and Lawsuit Commencement

In March 2015, the Food and Drug Administration ("FDA") issued a "warning letter" triggered by the following "about KIND" statement that appeared on some KIND labels:

> At KIND we do things differently and try to avoid false compromises. Instead of "or" we say "and." Healthy and tasty, convenient and wholesome, economically sustainable and socially impactful.

ECF No. 83 at 2.  Specifically, the FDA asserted that KIND'S "healthy and tasty" language was an "implied nutrient content claim" subject to regulations set forth in 21 C.F.R. § 101.65, and that certain KIND products did not meet the FDA's saturated fat content requirements necessary to describe food as "healthy."  ECF No. 52, Ex. A at 1-2.[4]  In response, KIND argued that many universally recognized healthy foods such as almonds, avocados, or

---

[4]    The FDA did not comment on KIND's use of the phrase "All Natural."  ECF No. 52, Ex. A.

salmon contain saturated-fat levels exceeding the limits prescribed by 21 C.F.R. § 101.65. ECF No. 83 at 2. Before any further action from the FDA, numerous "copycat" private lawsuits were filed, alleging that consumers were deceived by the "About KIND" statement, which were later transferred into this MDL. <u>Id.</u> The initial complaints challenged representations displayed on the packaging of the KIND products that claimed the products were "all natural," "healthy," "+," "plus," and a "good source of fiber" with "no trans fats," arguing that the products contained little nutritional value, high levels of saturated fat, and genetically modified, synthetic, or other non-natural ingredients. ECF No. 1 at 1-2. These cases were transferred to this District and consolidated in an MDL before the late Judge Pauley. <u>Id.</u>

### 2. The FDA Signals Imminent Rulemaking Regarding "All Natural" Labeling and the Case Is Stayed

In November 2015, the FDA announced the "establishment of a docket to receive information and comments on the use of the term 'natural' in the labeling of human food products, including foods that are genetically engineered or contain ingredients produced through the use of genetic engineering." <u>Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments</u>, 80 FR 69905-01, 2015 WL 6958210. These proceedings were based on applications from citizen petitions and "three Federal district courts" seeking guidance on whether certain

products "may be labeled as 'Natural,' 'All Natural," and/or '100% Natural.'"  80 FR 69905-01, 2015 WL 6958210.  Following the FDA's announcement, KIND moved to dismiss the claims against it, or in the alternative, to stay the action pending the FDA's promulgation of a rule addressing the word "natural" on labels.  See ECF No. 65-66.  It is somewhat ironic that the spark for the various lawsuits flamed out when in April 2016 — after the briefing of KIND's first motion to dismiss in this action but prior to oral argument on the motion — the FDA withdrew the objections to KIND products outlined in its warning letter and conceded that its "regulations concerning nutrient content claims are due for a reevaluation in light of evolving nutrition research."  ECF No. 73-5.  One month later, plaintiffs voluntarily dismissed their "healthy" claims.  ECF No. 74.  Judge Pauley granted the stay defendant requested, reasoning that the FDA seemed prepared to address core issues in the case and a stay would reduce the risk of inconsistent outcomes.  ECF No. 83 at 7-12.  Judge Pauley also dismissed any "Non GMO" claim without prejudice, finding that the plaintiffs had not properly pled a cause of action because they had not alleged that any specific KIND products contained GMOs.[5] Id. at 12-13.

---

[5]    Judge Pauley noted that it was not entirely clear from the complaint whether plaintiffs' intent was to file a standalone "Non GMO" claim.   ECF No. 83 at 13.

### 3. Plaintiffs Resurrect the "Non GMO" Claim

During the pendency of the stay, plaintiffs filed an amended consolidated class action complaint. ECF No. 84 ("ACC"). The ACC alleged in part that plaintiffs, who resided in New York, California, and Florida, had been deceived by the "All Natural/Non GMO" claim on KIND packaging. Id. ¶¶ 1, 7-10. Defendant moved to dismiss the "Non GMO" claim, ECF No. 100, arguing that plaintiffs had still failed to state a claim, ECF No. 101. Plaintiffs opposed the motion and moved to lift the stay. ECF No. 108. Judge Pauley denied the motion to dismiss, reasoning that the plaintiffs had sufficiently pled their "Non GMO" claim by alleging that testing revealed that certain KIND products contained GMOs and plaintiffs relied on the "All Natural" and "Non GMO" representations on the KIND packaging in purchasing the products. ECF No. 125. Judge Pauley also denied plaintiffs' motion to lift the stay and stayed prosecution of the "Non GMO" claim until August 15, 2018, in anticipation of the completion of the United States Department of Agriculture's ("USDA's") work on establishing a national GMO standard, which was expected on July 29, 2018. Id. at 12.

### 4. The Stay Is Lifted and the Classes Are Certified

On August 15, 2018, following publication of the USDA's non-GMO standard, plaintiffs again moved to lift the stay on both the "Non GMO" and "All Natural" claims. ECF No. 128. This time, Judge Pauley granted the motion, reasoning that there was no reason to

continue the stay on the "Non GMO" claims, and that it was prudent to lift simultaneously the stay on the "All Natural" claims to avoid piecemeal litigation.  ECF No. 140.

On January 17, 2020, plaintiffs moved to certify three Rule 23(b)(3) damages classes: (1) all persons who purchased the Products in New York for their personal use and not for resale at any time since April 17, 2009 (the "New York Class"); (2) all persons who purchased the Products in California for their personal use and not for resale at any time since April 17, 2011 (the "California Class"); and (3) all persons who purchased KIND's Products in Florida for their personal use and not for resale at any time since April 17, 2011 (the "Florida Class").  ECF No. 168. Plaintiffs also sought certification of injunctive classes pursuant to Rule 23(b)(2).  On March 24, 2021, Judge Pauley granted the motion to certify the New York, California, and Florida classes, but denied plaintiffs' request to certify the injunctive classes.  ECF No. 216.  After Judge Pauley's death, the case was transferred to this Court.  ECF No. 219.  Thereafter, the parties completed discovery, and the instant motions were filed.

### B.  Plaintiffs and the Remaining Claims[6]

As evident from the above history, the scope of the claims in

---

[6]    The following facts are principally drawn from the Rule 56.1 statement submitted by defendant on January 21, 2022, ECF No. 251; plaintiffs' response and objections to the 56.1 statement filed on March 4, 2022, ECF No. 282; and defendant's subsequent response to the 56.1 statement, ECF No. 309 (collectively "56.1"); as well as the exhibits to the declaration of Kerri Borders, ECF No.

this case has sharply contracted since the commencement of this

suit.  Plaintiffs have abandoned all challenges to the KIND labels,

except for their challenge to the "All Natural" claim.

Specifically, they now only challenge the "All Natural" portion of

the "All Natural/Non GMO" statement that appeared on three of

KIND's product lines:  KIND Core Bars (nut-based snack bars); KIND

Healthy Grain Bars (grain-based snack bars); and KIND Healthy Grain

Clusters (non-bar bags of granola).  56.1 ¶ 1.[7]  In the ACC,

plaintiffs offered five definitions relating to the term

---

259 and the exhibits to the declaration of Tina Wolfson, ECF No. 286. Where the
Court relies on facts drawn from any of the 56.1 Statements, it has done so
because the record evidence supports the statements, no rule of evidence bars
admission, and the opposing party has not disputed the facts or has not done so
with citations to admissible evidence.

[7]      Specifically, plaintiffs challenge 39 KIND products.  These are (1) Fruit
& Nut: Almond & Apricot; (2) Fruit & Nut: Almond & Coconut; (3) Fruit & Nut:
Almonds & Apricots in Yogurt; (4) Fruit & Nut: Apple Cinnamon Pecan; (5) Fruit
& Nut: Blueberry Vanilla Cashew; (6) Fruit & Nut: Dark Chocolate Almond &
Coconut; (7) Fruit & Nut: Fruit & Nut Delight; (8) Fruit & Nut: Fruit and Nuts
in Yogurt; (9) Fruit & Nut: Nut Delight; (10) Fruit & Nut: Peanut Butter and
Strawberry; (11) Nut & Spices: Caramel Almond and Sea Salt; (12) Nut & Spices:
Dark Chocolate Mocha Almond; (13) Nut & Spices: Dark Chocolate Chili Almond;
(14) Nut & Spices: Dark Chocolate Cinnamon Pecan; (15) Nut & Spices: Dark
Chocolate Nuts and Sea Salt; (16) Nut & Spices: Madagascar Vanilla Almond; (17)
Nut & Spices: Cashew and Ginger Spice; (18) Nut & Spices: Maple Glazed Pecan
and Sea Salt; (19) Nut & Spices: Honey Roasted Nuts & Sea Salt; (20) Plus:
Almond Walnut Macadamia with Peanuts + Protein; (21) Plus: Peanut Butter Dark
Chocolate + Protein; (22) Plus: Blueberry Pecan + Fiber; (23) Plus: Almond
Cashew With Flax + Omega 3; (24) Healthy Grains Bar: Dark Chocolate Chunk; (25)
Healthy Grains Bar: Peanut Butter Dark Chocolate; (26) Healthy Grains Bar: Maple
Pumpkin Seeds With Sea Salt; (27) Healthy Grains Bar: Oats and Honey With
Toasted Coconut; (28) Healthy Grains Bar: Vanilla Blueberry; (29) Healthy Grains
Clusters: Fruit & Nut Clusters; (30) Healthy Grains Clusters: Peanut Butter
Whole Grains Clusters; (31) Healthy Grains Clusters: Banana Nut Clusters; (32)
Healthy Grains Clusters: Cinnamon Oat Clusters With Flax Seeds; (33) Healthy
Grains Clusters: Maple Quinoa Clusters With Chia Seeds; (34) Healthy Grains
Clusters: Oats & Honey Clusters With Toasted Coconut; (35) Healthy Grains
Clusters: Raspberry Clusters With Chia Seeds; (36) Healthy Grains Clusters:
Vanilla Blueberry Clusters With Flax Seeds; (37) Plus: Dark Chocolate Cherry
Cashew + Antioxidants; (38) Plus: Pomegranate Blueberry Pistachio +
Antioxidants; and (39) Plus: Cranberry Almond + Antioxidants with Macadamia
Nuts (collectively the "KIND products" or the "Products.") ACC ¶ 1.

"natural."[8]  Id. ¶ 3.

KIND has discontinued the "All Natural/Non GMO" label.  Id. ¶ 6.[9]  KIND contends that this change began in 2014 on a rolling basis, but plaintiffs state it is unclear how long it took for the change to appear on products reaching stores, or when the "All Natural" label ceased to appear on products sold to consumers. Id. ¶ 6.  Partial images of the packaging designs for KIND Core bars depicting the challenged statements (left) and revised statements (right) are below:[10]

---

[8]    Plaintiffs offer the New Oxford American Dictionary definition, (ACC ¶ 39 ("existing in or caused by nature; not made or caused by humankind")); the FDA's policy, see 58 C.F.R. §§ 2302, 2407, (ACC ¶ 41 (defining the outer boundaries of the use of the term "natural" as "meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food")); the USDA's definition, (ACC ¶¶ 43-45 ("(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservatives ... or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed" (alteration in original))); and Congress's definition of synthetic,  7 U.S.C. § 6502(21)-(22), (ACC ¶ 46 ("defin[ing] synthetic to mean a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes" (quotation marks omitted))).

[9]    It appears that by 2017, KIND had discontinued all labels that depicted the "All Natural" claim.  ECF No. 181. In their briefing on the motion to decertify the classes, plaintiffs do not dispute this end date.  ECF No. 287. Further, KIND's 30(b)(6) fact witness, Elle Lanning, testified that "[t]o the best of [her] knowledge [removal of the all natural label] would have happened on a rolling basis from 2014 potential through 2015 or early 2016."  56.1 ¶ 6 (quoting ECF No. 280-1 52:2-8).

[10]    It also appears that certain of the KIND products had the "Non GMO" label replaced by a "No Genetically Engineered Ingredients."  ECF No. 216 at 22.

  

Id. ¶ 7.  Likewise, the challenged packaging for the KIND Plus Cranberry Almond + Antioxidants bar, which also displayed the claim and is emblematic of the packaging of KIND Plus Antioxidants bars, is depicted below:



Id. ¶ 8.

Each of the plaintiffs purchased certain KIND products and advances a different understanding of the "All Natural" representation.  We briefly detail their claims below:

Plaintiff Amanda Short is a resident of New York.  Id. ¶ 9. Short alleges that between November 2012 and when she filed this lawsuit in 2015, she purchased the Fruit & Nut Almond & Apricot

10

Core Bar, Dark Chocolate Cherry Cashew + Antioxidant Core Bars, and Nuts & Spices Dark Chocolate Nuts & Sea Salt Core Bars. Id. ¶ 10; ACC ¶ 7; ECF No. 259-3 ("Short Dep. Tr.") 13:3-7. Short testified that she believed that "natural" meant the Products were made from whole nuts, fruits, and whole grains. 56.1 ¶ 12. She also testified that it was possible that consumers could have different understandings about what "all natural" meant with respect to the Products. Id. ¶ 13.

Plaintiff Sarah Thomas is also a resident of New York. Id. ¶ 14. Thomas claims that between January 2014 and when she became involved in this lawsuit in 2015, she weekly purchased KIND products, including Fruit & Nut Almond & Coconut Core Bars, Peanut Butter Dark Chocolate + Protein Core Bars, Nuts & Spices Dark Chocolate Nuts Chili Almond Core Bars, Nuts & Spices Cashew & Ginger Spice Core Bars, and Nuts & Spices Dark Chocolate Nuts & Sea Salt Core Bars. Id. ¶ 15; ACC ¶ 8; ECF No. 259-2 ("Thomas Dep. Tr.") 14:6-17. Thomas testified that her understanding of "All Natural" was that "the ingredients were not synthetic, not chemicals, [but were] natural ingredients." 56.1 ¶ 17. Thomas also testified that it was possible that what a consumer thought about a natural food product in 2011 might be different from what a consumer thought about a natural food product in 2016. Id. ¶ 18.

Plaintiff Charity Bustamante is a resident of California. Id. ¶ 19. She claims that she purchased the Peanut Butter Dark Chocolate + Protein Core Bars, Nuts & Spices Dark Chocolate Nuts & Seal Salt Core Bars, KIND Cranberry Almond + Antioxidants with Macadamia Nuts Core Bars, and Dark Chocolate Cherry Cashew + Antioxidants Core Bars, but has "probably not" purchased a KIND product since 2015. Id. ¶ 20; ACC ¶ 9; ECF No. 259-4 ("Bustamante Dep. Tr.") 59:8-10. Bustamante did not recall if she ever purchased KIND Healthy Grain Bars or Healthy Grain Clusters. 56.1 ¶ 21. Bustamante testified at her deposition that she purchased KIND products because she understood them to be a healthy, non-GMO snack, and stopped when she realized that they might not be healthy or non-GMO. Id. ¶ 22. She also testified at her deposition that she thought that an all natural product would be one without GMO ingredients and one that would be "good for" her. Bustamante Dep. Tr. 131:13-19. In her declaration filed in support of class certification, Bustamante stated that she said that she relied on KIND's representation that the products were "All Natural." 56.1 ¶ 22.

Plaintiff Elizabeth Livingston is a resident of Florida, who alleges that she purchased the Fruit & Nut Almond & Coconut Core Bars, Peanut Butter Dark Chocolate + Protein Core Bars, and Dark Chocolate Cherry Cashew + Antioxidants Core Bars during the "relevant time period," but not since filing her lawsuit in 2015.

Id. ¶¶ 26-27; ACC ¶ 10; ECF No. 259-1 ("Livingston Dep. Tr.") 9:15-17. Livingston testified that she believed that a natural product would be one that is "pull[ed] out of the Earth" or "dirt," or "untouched."  Id. ¶ 29.  Livingston also testified that "[n]ot everybody" agrees with her understanding of "All Natural," and that "other consumers who buy KIND bars may think all natural means something different than [she does]."  Id. ¶ 30.

## II.  Legal Standard

### A.  Standard for Summary Judgment

In order for summary judgment to be granted, the movant must show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Brady v. Town of Colchester, 863 F.2d 205, 210-11 (2d. Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Unlike on a motion to dismiss or a motion for class certification, where the allegations in the plaintiffs' complaint are accepted as true, at summary judgment, plaintiffs must demonstrate "significant probative evidence," which a reasonable factfinder could rely on to decide in their favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (quotation marks and citation

omitted).   "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"  <u>Id.</u> at 252.   Plaintiffs may not rely upon "conclusory statements or mere allegations," they must "go beyond the pleadings, and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Davis v. New York</u>, 316 F.3d 93, 100 (2d Cir. 2002) (quotation marks and citations omitted).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Crawford v. Franklin Credit Mgmt.</u>, 758 F.3d 473, 486 (2d Cir. 2014) (quoting <u>Celotex</u>, 477 U.S. at 323) (alteration in original).

### B. Plaintiffs' Claims

As noted earlier, plaintiffs bring statutory claims under New York, California, and Florida law, as well as common law claims for breach of warranty, unjust enrichment, and negligent misrepresentation.  However, regardless of the claim asserted, as the below summary of the claims demonstrates, there is substantial overlap between the elements of the claims.  To prevail, plaintiffs must demonstrate: (1) a deceptive act; (2) materiality; and (3) injury.

### 1.   New York Statutory Claims

The General Business Law ("GBL") provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349. To establish a <u>prima facie</u> case under GBL §§ 349 or 350, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521-22 (2d Cir. 2000). Materiality under §§ 349 and 350 of the GBL is an objective inquiry; a deceptive act is defined as one "likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Id.</u>

### 2. The California Statutory Claims

Claims brought under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") "are governed by the 'reasonable consumer' test." <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." <u>Id.</u> (quotation marks omitted). Relief under the UCL, FAL, and CLRA is available without individualized proof of "reliance and injury, so long as the named plaintiffs demonstrate injury and causation." <u>Guido v. L'Oreal, USA, Inc.</u>, 284 F.R.D. 468, 482 (C.D. Cal. 2012).

"A presumption, or at least an inference, of reliance arises under the UCL and FAL whenever there is a showing that a misrepresentation was material." McCrary v. Elations Co., 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014) (alteration omitted).

### 3.  The Florida Statutory Claims

Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") employs a similar framework as New York and California for false and deceptive advertising claims.  "A claim under FDUTPA has three elements: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages." Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1292 (M.D. Fla. 2009).  FDUTPA employs a "hybrid standard," which can be "objectively established as to mindset but subjectively established as to context." In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices, 715 F. Supp. 2d 1265, 1282 (S.D. Fla. 2010), aff'd sub nom. Webber v. Esquire Deposition Servs., LLC, 439 F. App'x 849, 851 (11th Cir. 2011).  To prevail on a claim, the plaintiffs must show that a reasonable consumer would have been deceived.  See Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000) ("[T]he question is not whether the plaintiff actually relied on the alleged deceptive trade practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances.").  As Judge Pauley concluded, "broadly speaking, the statutes contain the same three elements . . . (1) the

16

deceptive act, (2) materiality, and (3) injury."  ECF No. 216 at 21.

### 4.  Common Law Claims

Plaintiffs also bring common law claims for negligent misrepresentation, breach of express and implied warranty, and unjust enrichment.  These claims are similarly premised on plaintiffs establishing a deceptive and misleading act and fail if plaintiffs cannot meet the statutory standard.  See Barreto v. Westbrae Nat., Inc., 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (dismissing common law claims because plaintiffs did not plead statutory GBL claims, and, in particular, that label was "materially misleading").

### C. Standard for Admissible Expert Testimony under Rule 702 and Daubert

The parties have also filed motions to disqualify each other's experts.  Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence, which provides in full:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the Supreme Court's decisions in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d

469 (1993), and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), this Court has a "'gatekeeping' function under Rule 702," under which we are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 265 (2d Cir. 2002) (quoting <u>Daubert</u>, 509 U.S. at 597). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied[.]" <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007). The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications; (2) reliability; and (3) relevance and assistance to the trier of fact. <u>See</u> <u>Nimely v. City of New York</u>, 414 F.3d 381, 396-97 (2d Cir. 2005).

### III. <u>Discussion</u>

Defendant argues that plaintiffs fail at the first hurdle because they have failed to demonstrate that the "All Natural" claim on KIND products is deceptive or misleading. We agree and find this failure fatal to plaintiffs' case.

Central to defendant's argument is the "reasonable consumer" standard, which requires plaintiffs seeking recovery under the various consumer protection statutes at issue in this case to show that a "reasonable consumer would have been misled by the

defendant's conduct." See Ackerman v. Coca-Cola Co., No. 09 Civ. 0395 (JG), 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (analyzing claims under the GBL, UCL, FAL, and CLRA); In re Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *13 (E.D.N.Y. Aug. 29, 2013) (applying reasonable consumer standard to claims brought under GBL, UCL, FAL, CLRA and FDUPTA).

The reasonable consumer standard is an "objective standard." Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 236 (S.D.N.Y. 2021). The reasonable consumer standard requires more than a mere possibility that the defendant's label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks and citation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. (internal quotation marks and citation omitted). "[U]pon [defendant's] Motion for Summary Judgment, it is incumbent upon [plaintiff] to introduce evidence that could support a finding that reasonable consumers believe" the plaintiffs' proffered theory of deception. Tran v. Sioux Honey Ass'n, Coop., 471 F. Supp. 3d 1019, 1026 (C.D. Cal. 2020) (granting summary judgment to defendant where plaintiff challenged honey displaying a "100%

Pure" label because plaintiff failed "to introduce evidence that could support a finding that reasonable consumers believe the word 'Pure' on the label means that there will be no <u>trace</u> <u>amounts</u> of pesticide in their honey[.]") (emphasis in original).  "To satisfy the reasonable consumer standard, a plaintiff must adduce extrinsic evidence—ordinarily in the form of a survey—to show how reasonable consumers interpret the challenged claims."  <u>Hughes v.</u> <u>Ester C Co.</u>, 330 F. Supp. 3d 862, 872 (E.D.N.Y. 2018).

To establish that KIND's "All Natural" statement is deceptive or misleading, plaintiffs must therefore: (1) introduce evidence demonstrating a reasonable consumer's understanding of "All Natural"; and (2) produce extrinsic evidence that would allow a fact finder to determine that the KIND products fall outside that understanding of "All Natural."

### A.  Plaintiffs Have Failed to Articulate Why a "Reasonable Consumer" Would Find the KIND Products Are Not "All Natural"

We first turn to the question of whether plaintiffs have introduced evidence demonstrating a reasonable consumer's understanding of "All Natural."  For the following reasons, we find that plaintiffs have not introduced evidence that could allow a factfinder to determine a reasonable consumer's understanding of "All Natural," and therefore, their claims cannot survive defendant's motion for summary judgment.

1. **Plaintiffs Cannot Rely on the Definition of "All Natural" Judge Pauley Articulated at Class Certification**

Plaintiffs' decision to abandon their "Non GMO" claim is not without consequence to their "All Natural" claim.  At class certification, Judge Pauley found that that common questions of fact predominated because the "Non GMO" claim and the "All Natural" claim were in relevant part, coextensive claims:

> [T]he differences between "Non-GMO" and "No Genetically Engineered Ingredients" on one hand, and "All Natural" on the other, are minute. "Natural" can be defined as "existing in or caused by nature; not made or caused by humankind." (ACC ¶ 39 (quoting New Oxford American Dictionary 1167 (3d ed. 2010)).) If a product contains a GMO, it by definition cannot be natural. . . none of the labels displayed "All Natural" on its own.  Rather, KIND coupled "All Natural" with "Non-GMO."

ECF No. 216 at 22-23.  But plaintiffs are no longer arguing that any KIND product contains GMOs or genetically engineered ingredients.  As plaintiffs have abandoned all allegations of the predicate facts necessary to prove KIND is liable under this theory of "All Natural," they cannot take advantage of Judge Pauley's determination that a plausible definition of "All Natural" is "Non GMO."[11]

---

[11]   We also note that at class certification, plaintiffs' allegations in their complaint were accepted as true.  In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. 581, 593 (S.D.N.Y. 2021).  Thus, Judge Pauley credited plaintiffs' proffered definition of "All Natural," as alleged in the complaint, without evaluating whether there was evidence in the record that a reasonable consumer would share that definition.  But on a motion for summary judgment, such as this, plaintiffs are not entitled to the presumption that the allegations in their complaint are true, and we must determine whether a reasonable consumer would share plaintiffs' definition.  We further note that no reasonable consumer

Moreover, we note that, in the context of an "All Natural/Non GMO" statement, it is not clear that a reasonable consumer would perceive "All Natural" to have a meaning separate and apart from "Non GMO."  The "All Natural" claim is presented in the same line as the "Non GMO" claim, separated by a forward slash, which commonly indicates "and or."  This depiction plausibly indicates to a consumer that the claims are related, and potentially that the KIND product is "All Natural, in other words, Non GMO." Certainly, Judge Pauley saw the claims as related.  Id. (finding common issues of law and fact predominated in part because "none of the labels displayed 'All  Natural' on its own and KIND coupled 'All Natural' with 'Non-GMO'").  Plaintiff Bustamante also saw the claims as related, stating her deposition that an "All Natural" product is one "without GMO ingredients" that would be "good for" her.  Bustamante Dep. Tr. 131:13-19.   As discussed infra, plaintiffs now only examine "All Natural" in isolation - never in the context of the "All Natural/ Non GMO" statement.  Plaintiffs' persistent failure to consider the challenged claim in the context in which it appeared to consumers undercuts the arguments that plaintiffs assert regarding how consumers viewed the claim.

---

could find a KIND product, in its final, packaged form, was literally not "made or caused by humankind."

## 2. No Objective Definition of "All Natural" Exists

The potential alternative of reliance on an established definition of "All Natural" to determine a reasonable consumer's definition of "All Natural" is not available to plaintiffs. The FDA has still not promulgated a regulation regarding the use of "All Natural" on product labels.[12] Indeed, the FDA's solicitation of comments regarding a potential regulation of the term "All Natural" demonstrates that the phrase is subject to numerous and distinct definitions, without a single objective meaning to consumers. For example, the FDA solicited comments and proposals addressing, inter alia, whether the term "All Natural" should encompass: (1) the "type(s) of ingredients [that] would disqualify the food from bearing the term [natural]"; (2) whether "the manner

---

[12] The FDA does have longstanding guidance regarding the definition of "All Natural," which states:

> The FDA has considered the term "natural" to mean that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in that food. However, this policy was not intended to address food production methods, such as the use of pesticides, nor did it explicitly address food processing or manufacturing methods, such as thermal technologies, pasteurization, or irradiation. The FDA also did not consider whether the term "natural" should describe any nutritional or other health benefit.

Use of the Term Natural on Food Labeling, U.S. Food & Drug Administration, (Oct. 22, 2018) https://www.fda.gov/food/food-labeling-nutrition/use-term-natural-food-labeling#:~:text=The%20FDA%20has%20considered%20the,to%20be%20in%20that%20food. The FDA's policy does not provide clear guidance in this case, where it is, by its own terms, dependent on what a consumer would "expect[] to be in that food." As such, this definition does not establish a reasonable consumer's understanding of the term "All Natural." See also Segedie v. Hain Celestial Grp., Inc., No. 14 Civ. 5029 (NSR), 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("Likewise, the FDA's and USDA's respective policies concerning 'natural,' while potentially relevant, are not controlling.")

in which an ingredient is produced or sourced [should] affect whether a food containing that ingredient may be labeled as 'natural'"; (3) whether "certain production practices used in agriculture, for example, genetic engineering . . . be a factor in defining 'natural'"; and (4) whether "the term 'natural' [should] only apply to 'unprocessed' foods [and i]f so, how should 'unprocessed' and 'processed' be defined[?]"  Use of the Term "Natural", 2015 WL 6958210.  The FDA further noted that, due to the plurality of definitions, there is "evidence that consumers regard many uses of this term as non-informative."  Id.

Likewise, plaintiffs' own statements and positions similarly demonstrate the diversity of views about how to understand the term "All Natural."  For example, plaintiffs' amended consolidated complaint advances five different definitions relating to the term "natural."[13]  ACC ¶¶ 39-46.  While, as Judge Pauley noted, these definitions are not inconsistent, ECF No. 216 at 26-27, they are not all coextensive; that is, a product can meet the criteria in the FDA guidance that it does not contain unexpected artificial ingredients without meeting the criteria in the dictionary definition proffered by plaintiffs that it is "existing in or caused by nature; not made or caused by humankind," ACC ¶ 39.

---

[13]    See supra at 8 n.7.

Similarly, each of the plaintiffs in this case has advanced a different theory about how to understand the term, "All Natural." See 56.1 ¶ 12 (Short testified that she believed that "natural" meant the Products were made with whole nuts, fruits, and whole grains); ¶ 17 (Thomas testified her understanding of "All Natural" was that "the ingredients were not synthetic, not chemicals, [but were] natural ingredients"); ¶ 29 (Livingston testified a natural product is "pull[ed] out of the Earth" or "dirt," or "untouched"); see also Bustamante Dep Tr. 131:13-19 (testifying an all natural product would be one without GMO ingredients and one that would be "good for" her).  Given this diversity of views, none of these definitions supplies, or purports to be, a reasonable consumer's definition of "All Natural."  Plaintiffs therefore have not, prior to the instant motion, articulated before this Court a viable theory for why the challenged KIND products are not within a reasonable consumer's understanding of "All Natural."

### 3. Dr. Dennis's Report Does Not Establish a Reasonable Consumer's Understanding of "All Natural"

Having failed to plead a reasonable consumer's understanding of "All Natural," plaintiffs must rely on the testimony of Dr. J. Michael Dennis, who conducted a "consumer perception survey" to meet their burden.  Dr. Dennis is experienced as an expert in litigation; he has testified as a survey research expert for over 20 years and estimates that he has testified in approximately 40

cases in the last ten years.  ECF No. 259-5 ("Dennis Rpt.") ¶ 11;
ECF No. 259-9 ("Dennis Dep. Tr.") at 11:11-13.  He holds B.A. and
M.A. degrees in government studies from the University of Texas,
Austin and received his Ph.D. degree in political science from the
University of Chicago.  Dennis Rpt. ¶ 14.  Defendant challenges
Dr. Dennis's survey, arguing that it is inadmissible because it is
biased and leading, and therefore cannot assist the trier of fact.
This Court agrees, and so finds that there is a "complete failure
of proof concerning an essential element" of plaintiffs' case,
which necessarily renders all other facts immaterial such that
summary judgment is granted to defendant.  Crawford, 758 F.3d at
486.

### a. Dr. Dennis's Perception Survey

Dr. Dennis conducted a survey that purports to determine how
a reasonable consumer, acting reasonably under the circumstances,
understands KIND's "All Natural" claim.  Dr. Dennis first screened
consumers to ascertain if they resided in Florida, California, or
New York, and had purchased a snack bar from KIND or certain
competitors in the last 12 months.[14]  Dennis Rpt. ¶ 26.  He then
presented individuals with a mock-up of a product, that, in many
respects, resembled the packaging of a KIND bar.

---

[14]   81.3% of respondents had purchased a KIND bar in the last 12 months.
Dennis Rpt. ¶ 31.



Id. ¶ 40.  Dr. Dennis then asked each of the participants whether they agreed, disagreed, or did not know/were not sure if they agreed with a statement regarding the "All Natural" product:

The product packaging has this descriptor:

**ALL NATURAL**

Because of this descriptor, what is your expectation for this product?

The product ...



Please select one.

○ Will <u>NOT</u> contain artificial and synthetic ingredients

○ Will contain artificial and synthetic ingredients

○ Not sure/No expectation

Id. ¶ 48.  Dr. Dennis found that 86.4% of consumers selected the option that an "All Natural" product would not contain "artificial or synthetic ingredients." Id. ¶ 95.  Likewise, Dr. Dennis also

asked consumers to select one of the following options regarding their expectations of an "All Natural" product: (1) that it is not "made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid"; (2) that it "is made using these chemicals: Phosphoric Acid,[15] Hexane,[16] Potassium Hydroxide,[17] Ascorbic Acid[18]"; or (3) that they were "Not sure/No expectation."

---

[15]    Phosphoric acid is a common ingredient in fertilizer and used in chemical synthesis. Background Report, AP-42 Section 5.11: Phosphoric Acid, Pacific Environmental Services, https://www.epa.gov/sites/default/files/2020-09/documents/final_background_document_for_phosphoric_acid_section_8.9.pdf. Plaintiffs do not contend that the KIND products contain phosphoric acid.

[16]    Hexane is used to extract edible oils from seeds and vegetables, as a special-use solvent, and as a cleaning agent. See Hexane, Environmental Protection Agency, https://www.epa.gov/sites/default/files/2016-09/documents/hexane.pdf. It is unclear if Dr. Dennis selected this chemical because it is one of the substances Dr. Toutov discusses.

[17]    Potassium hydroxide is also known as lye. See Hazardous Substance Fact Sheet, New Jersey Department of Health, https://nj.gov/health/eoh/rtkweb/documents/fs/1571.pdf. Plaintiffs do not contend that the KIND products contain potassium hydroxide.

[18]    Ascorbic acid is another name for Vitamin C. See Vitamin C, Mayo Clinic https://www.mayoclinic.org/drugs-supplements-vitamin-c/art-20363932. Some KIND products, discussed infra, contain ascorbic acid. See 56.1 ¶ 73. Shockingly, Dr. Dennis claimed that he was unaware of "exactly what [ascorbic acid] is," Dennis Dep. Tr. 95:12-14, and claims he only included it in his survey because it was one of the "chemicals that I saw in the amended complaint." Id. 93:25-94:5. Dr. Dennis's decision to blindly include items listed by plaintiff's counsel in the complaint, without any investigation or consideration of the appropriateness of those items, only underscores his survey's lack of reliability.

The product packaging has this descriptor:

**ALL NATURAL**

Because of this descriptor, what is your expectation for this product?

The product ...



Please select one.

○ Is <u>NOT</u> made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid

○ Is made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid

○ Not sure/No expectation

Id. ¶ 50.

> b.  *Dr. Dennis's Survey is Biased and Leading*

Dr. Dennis's survey is inadmissible because it is biased and leads the consumer to select the answer preferred by plaintiffs. A survey cannot assist the trier of fact where it poses a "leading question in that it suggest[s] its own answer." Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 118 (2d Cir. 1984) (excluding survey in trademark infringement action); see also Scotts Co. v. United Indus. Corp., 315 F.3d 264, 269 (4th Cir. 2002) (holding that when survey questions are leading and suggestive, this "weaken[s] the relevance and credibility of the survey evidence to the point that it sheds no light on the critical question in [the] case."); Valador, Inc. v. HTC Corp., 242 F. Supp.

3d 448, 465 (E.D. Va. 2017) (excluding "unreliable" survey with "improperly suggestive" questions that "creat[ed] 'demand effects' or 'cues' from which a respondent can 'infer the purpose of the survey and identify the 'correct' answers.'")(citation omitted). Here, Dr. Dennis's survey improperly directs survey participants to the "correct" answer.  Rather than inquiring into a reasonable consumer's definition of "All Natural," Dr. Dennis's survey is plainly designed to validate plaintiffs' theory.

In his first question regarding consumer's expectations for an "All Natural" product, Dr. Dennis asks only about one potential definition of "All Natural" – the definition that plaintiffs selected for this case – and only allows survey participants to select from finite choices agreeing, disagreeing, or not having an expectation about this definition.  This limited inquiry is insufficient to determine in any meaningful sense how reasonable consumers understand the "All Natural" claim, or to test plaintiffs' theory.  Dr. Dennis does not contrast the plaintiffs' theory with any other possible competing theory (e.g., whether "All Natural" could mean "preservative free," "no added flavors," or even any of the various theories or definitions plaintiffs previously advanced in this case or any of the theories included in the FDA's notice soliciting comments).  Similarly, as defendant suggests, Dr. Dennis could have asked open-ended questions to determine the consumer's understanding of the term.  But, as Dr.

30

Dennis admitted at his deposition, he only provided two "alternate understandings" of the "All Natural" claims because he "thought that's what the plaintiff's [sic] theory of liability amounted to." Dennis Dep. Tr. 80:14-17.

In fact, at his deposition, Dr. Dennis was candid that his survey questions were formulated with the sole purpose of supporting plaintiffs' litigation strategy. He testified: "My exercise was not a general one of measuring consumers' opinions of the 'All Natural' claim in a vacuum. I was asked to test the plaintiffs' theory of liability; so it was not an open-ended fishing exercise to measure what consumers just thought of the 'All Natural' claim[.]" Id. 81:2-10. Indeed, Dr. Dennis admitted that plaintiffs' counsel provided the proposed definition, stating, "I did check with plaintiffs' counsel to – to see if I'm on the right track here in defining the – and translating the plaintiffs' theory of liability into survey questions." Id. 89:22-25.

Similarly, Dr. Dennis chose to display the "All Natural" claim in isolation, rather than as part of the "All Natural/Non GMO" statement, as it always appeared on KIND labels.[19] Dr. Dennis did so despite the fact that he admitted that his concern in displaying the two terms together was that they "would interact." Id. at

---

[19]     At his deposition, Dr. Dennis stated that his understanding (in fact, misunderstanding) was that the "Non GMO" claim was "not always shown in combination" with the "All Natural" claim. Dennis Dep. Tr. 53:5-6.

54:24.[20]  The choice to present the "All Natural" claim by itself, rather than as it appeared on KIND products, undercuts the relevance of Dr. Dennis's results.

Likewise in his second question, Dr. Dennis listed "chemicals" drawn from plaintiffs' amended consolidated complaint, without personally reaching any understanding of what those "chemicals" were, or whether they were ingredients that cannot be considered "All Natural."[21]  See id. 93:25-94:5; 95:12-14 (admitting Dr. Dennis was unaware of "exactly what [ascorbic acid] is," and explaining he included it because it was one of the "chemicals that I saw in the amended complaint").  Dr. Dennis

---

[20]    Dr. Dennis speculated that displaying the "All Natural" claim with the "Non GMO" claim would increase the number of survey participants who selected the option that they would expect an "All Natural" product to exclude "artificial or synthetic ingredients."  Dennis Dep Tr. 55:10-17.  But Dr. Dennis did not ask any survey questions to verify his hunch.

[21]    The "chemicals" Dr. Dennis inquired about are also largely irrelevant because three out of the four are not present in KIND products.  Plaintiffs do not claim that phosphoric acid or potassium hydroxide are actually present, in any amount, in KIND products.  While plaintiffs attempt to argue that hexane may be present in some KIND products, plaintiffs' argument is pure speculation.  Plaintiffs did not do any testing of KIND products to determine if they contained hexane.  56.1 ¶ 72.  KIND, on the other hand, did undertake testing to determine if any KIND product contained hexane, and determined that no hexane was present in any of the tested KIND products.  Id.  Further, plaintiffs' attempt to quibble with KIND's test on the basis that it is theoretically possible that KIND products could still contain less than one part per million of hexane is foreclosed as a matter of law.  Courts routinely find that trace amounts of non-natural substances do not invalidate a product's "natural" claim.  See Parks v. Ainsworth Pet Nutrition, LLC, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2020); Axon v. Citrus World, Inc., 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018) ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA.") (alteration in original) (citation omitted), aff'd sub nom. Axon v. Fla's Nat. Growers, Inc., 813 F. App'x 701 (2d Cir. 2020) (affirming district court's grant of a motion to dismiss); In re Gen. Mills Glyphosate Litig., 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) (holding that as a matter of law, not plausible that a reasonable consumer would be deceived by trace glyphosate in food product labeled as "natural").

transparently constructed this question so that it would lead
consumers to find the listed "chemicals" were not "All Natural."
At his deposition, Dr. Dennis tacitly acknowledged the leading
effect of the word "chemicals."  When asked if he would expect a
similar response if he had listed fictitious chemicals instead of
the chemicals listed, Dr. Dennis stated that he did not know, but
thought it would depend on "the quality of the substituted
fictitious chemicals and the extent to which they looked, you know,
reasonable or not." Id. 98:18-99:3.  Dr. Dennis's admission tracks
the common-sense intuition that, when prompted by the word
"chemicals," consumers' consideration of the listed substances
described as chemicals is tainted by the connotation that
"chemicals" carries.  Despite this understanding, Dr. Dennis
"thought it would not serve the project well for me to define these
[listed chemical] terms." Id. 96:23-24.  The failure to define
the terms is a clear attempt to manipulate consumers into selecting
the answer that plaintiffs preferred.

Moreover, Dr. Dennis's choice to omit definitions is
particularly significant given the range of "chemicals" included
in his list.  In particular, Dr. Dennis tacked "ascorbic acid" –
another name for Vitamin C – at the tail-end of his list of
"chemicals."  His choice to do so, and to describe Vitamin C as an
"acid," paralleling the description of "phosphoric acid," which
appears first in the list and is not safe for ingestion, is a clear

prompt to consumers as to how to "correctly" answer the question. As a result of this manipulative design choice, the Court finds the question has no probative value and could not assist a trier of fact.

Due to the limited scope of inquiry, even ignoring the foregoing methodological deficiencies, Dr. Dennis's survey would provide no useful information about how a reasonable consumer understands "All Natural."  Dr. Dennis's survey does not define "artificial" or "synthetic," or what it means for a product to "contain" or be "made with" those ingredients.  Confusingly, plaintiffs assert that this was a feature, not a bug: "But KIND misses the point—the goal of this part of the survey was for respondents to interpret the meaning of 'artificial or synthetic' or 'made with' phrases."  ECF No. 278 ("Dennis Opp.") at 17. However, without any context or elaboration of a reasonable consumer's understanding of "artificial or synthetic ingredients," the fact finder is left guessing at what a reasonable consumer would understand these terms to mean.[22]  For example, to evaluate

---

[22]    Plaintiffs are also incorrect when they argue that it is sufficient to just say "assume[] that the meaning [the survey participants] attached [to the terms in Dennis's definitions] was plain English."  Dennis Opp. at 17.  Plain English does not provide any elaboration as to how a consumer interpreted the terms in Dr. Dennis's survey.  Merriam Webster defines "artificial" as <u>inter alia</u>, "humanly contrived [] often on a natural model", and "lacking in natural or spontaneous quality."  <u>See</u> <u>Artificial</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/artificial.  Similarly, synthetic is defined as "of, relating to, or produced by chemical or biochemical synthesis, <u>especially</u>: produced artificially."  <u>Synthetic</u>, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/synthetic.  At best, the Dennis definition offers no more than a tautology: something that is not

the claims at issue in the case using Dr. Dennis's framework, the fact finder would have to answer the following questions:

- What processing, if any, does a reasonable consumer believe can occur to an ingredient or product before that ingredient or product is considered artificial or synthetic?

- Are ingredients that do occur naturally, such as Vitamin A or C, but potentially manmade in the specific form that appears in KIND products, artificial or synthetic?

- Are trace or residual amounts of chemicals that were used in processing ingredients in KIND bars enough to cause the KIND products to contain "artificial or synthetic ingredients"?[23]

These questions are central to plaintiffs' theory of the case. Plaintiffs argue, in large part, that KIND products are not "All Natural" because they are either heavily processed, potentially using certain arguably "artificial" or "synthetic" products, or because they may potentially retain trace amounts of those products. See, e.g., Opp. at 6-7. Leaving a factfinder to guess at the answers to key questions in this case completely undermines any claim that Dr. Dennis's definition can serve as the "objective standard" necessary to determine if the KIND labels are false or misleading. See Barton, 535 F. Supp. 3d at 236.

---

natural is not natural. This does not shed light on how a reasonable consumer could answer the question actually at issue in this case, i.e., are the KIND products "All Natural." As such, Dr. Dennis's first question does not provide assistance to the trier of fact.

[23] We note that though plaintiffs try to advance this theory, see Opp. at 6-7, courts have rejected the argument that as a matter of law, residual traces of chemicals are insufficient to cause a product to fail to be "all natural." See supra at 32 n.20.

Plaintiffs argue in response that they did not need to provide "a universally accepted definition of 'All Natural,'" but instead only determine if a reasonable consumer would interpret an "All Natural" claim on a product to mean that the product did not contain specific artificial and synthetic ingredients. Opp. at 6. This response misses the mark. All plaintiffs have done here is show that consumers, when provided with the definition of "All Natural" that plaintiffs' counsel constructed for this litigation, will click a check box saying that they agree to it. But this is not evidence that the "All Natural" label would deceive "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances." Brazil v. Dole Packaged Foods, LLC, 660 F. App'x 531, 533 (9th Cir. 2016); see also Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (noting for an act to be misleading under the GBL it must be "likely to mislead a reasonable consumer acting reasonably under the circumstances").

While Dr. Dennis's "no artificial or synthetic ingredients" definition is, on its face, plausible, mere plausibility is insufficient at this stage of the litigation. Instead, plaintiffs must show that evidence that would allow a trier of fact to determine that a reasonable consumer actually would hold the proposed understanding of the term "All Natural." It is therefore insufficient for Dr. Dennis's definition to resemble the criteria

36

articulated in other definitions of "All Natural," which also reference the terms artificial or synthetic.[24] There is no evidence that, absent prompting with plaintiffs' counsel definition, a reasonable consumer would hold the understanding of "All Natural" plaintiffs now advance. Nor is there any evidence as to how this definition of "All Natural" would compare to other plausible definitions, including the definitions that plaintiffs themselves proffered. Plaintiffs' argument is essentially that plaintiffs' counsel can construct a broad definition of "All Natural," circulate that definition for consumer approval, and then claim that reasonable consumers held plaintiffs' definition (as plaintiffs will proceed to specifically interpret it) all along, such that they were deceived by a company's failure to meet that definition. Rather than determining how reasonable consumers understand the "All Natural" claim, plaintiffs are supplying the standard, and then arguing that consumers were deceived. Defendant cannot be held liable because it has failed to adjust its labeling

---

[24]    See, e.g., New Oxford American Dictionary definition, (ACC ¶ 39 ("existing in or caused by nature; not made or caused by humankind")); the FDA's policy, see 58 C.F.R. §§ 2302, 2407, (ACC ¶ 41 (defining the outer boundaries of the use of the term "natural" as "meaning that nothing artificial or synthetic (including all color activities regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food")); and the USDA's definition, (ACC ¶¶ 43-45 ("(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservatives . . . or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed" (alteration in original))).

to hit the moving target of counsel's various solicited understandings of "All Natural." Nor can defendant be held responsible for a host of possible, even if potentially reasonable, consumer beliefs about the meaning of "All Natural." Such multiplicity distorts the reasonable consumer standard.

Plaintiffs also claim that challenges to Dr. Dennis's methodology "ultimately go to the weight, not the admissibility, of Dr. Dennis's testimony and are fodder for cross-examination, not exclusion." In re Scotts EZ Seed Litig., No. 12 Civ. 4727 (VB), 2017 WL 3396433, at *8 (S.D.N.Y. Aug. 8, 2017) (citation and alterations omitted). But where the survey is so misleading that it cannot assist the trier of fact, it is inadmissible, even when that failure is due to its methodology. Universal City Studios, Inc., 746 F.2d at 118 (2d Cir. 1984) (excluding survey in trademark infringement action due to leading questions); see also Nimely, 414 F.3d at 396-97 ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony.") (internal quotation marks and citation omitted). Plaintiffs cannot side-step this Court's "task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," Daubert, 509 U.S. at 597, by claiming that the deficiencies are methodological.

Thus, Dr. Dennis's perception survey does not assist the trier of fact because it is biased, leading, and to the extent it provides any insight, cannot provide the objective standard necessary to answer the key question in this case.[25] As it cannot assist the trier of fact, the survey and Dr. Dennis's testimony regarding the survey are inadmissible.

Without the expert testimony of Dr. Dennis, plaintiffs have not proffered a theory as to how a reasonable consumer would understand the "All Natural" claim on the KIND products.[26] As

---

[25]    We note that we are not the first Court to find that Dr. Dennis's opinions are unreliable.  See, e.g., Strumlauf v. Starbucks Corp., No. 16 Civ. 01306 (YGR), 2018 WL 306715, at *6-7 (N.D. Cal. Jan. 5, 2018) (rejecting Dr. Dennis's survey as unreliable because it was leading); In re 5-Hour Energy Marketing and Sales Practices Litig., No. ML 13-2438 (PSG), 2018 WL 11354864, at *8 (C.D. Cal. January 24, 2018) (finding Dr. Dennis's survey "flawed"); Senne v. Kansas City Royals Baseball Corp., 315 F.R.D. 523, 583 (N.D. Cal. 2016) (excluding testimony), on reconsideration in part, 2017 WL 897338 (N.D. Cal. Mar 7, 2017), aff'd in part, rev'd in part and remanded, 934 F.3d 918 (9th Cir. 2019); O'Bannon v. Nat'l Collegiate Athletic Ass'n, 7 F. Supp. 3d 955, 976 (N.D. Cal. 2014) (finding Dr. Dennis's opinions unreliable), aff'd in part, vacated in part, 802 F.3d 1049 (9th Cir. 2015); but see In re Scotts EZ Seed, 2017 WL 3396433, at *10 (admitting testimony); Pettit v. P&G, No. 15 Civ. 02150 (RS), 2017 WL 3310692, at *4 (N.D. Cal. Aug. 3, 2017) (same); Sharpe v. A&W Concentrate Co., No. 19 Civ. 768, 2021 WL 3721392, at *9 (E.D.N.Y. July 23, 2021) (admitting testimony at class certification because defendants challenges to Dr. Dennis's survey are "premature"); Testone v. Barlean's Organic Oils, LLC, No. 19 Civ. 169 (JLS) (BGS), 2021 WL 4438391, at *17 (S.D. Cal. Sept. 28, 2021) (admitting testimony).

[26]    Plaintiffs point in their opposition to internal KIND documents, statements of KIND's founder, and to a survey referenced in the FDA's solicitation of comments regarding the "All Natural" claim. Opp. at 5. Neither piece of evidence provides a basis for a fact finder to determine a reasonable consumer's definition of "All Natural." To the extent that plaintiffs are trying to rely on KIND's statements, these do not purport to establish a reasonable consumer's definition of "All Natural" and just represent the views of KIND employees or internal KIND survey data. Moreover, the FDA's notice soliciting comments references various potential meanings of "All Natural," for the purpose of trying to establish a standard, and notes that "consumers regard many uses of this term as non-informative." 80 FR 69905-01, 2015 WL 6958210. As such, the FDA's notice does not establish any fixed definition of "All Natural." Further, Plaintiffs cannot cherry-pick one of the possibilities the FDA suggested in announcing its effort to define "All Natural," and hold it out as a reasonable consumer's definition, any more than the FDA's other suggestions.

such, we find that defendant succeeds on its motion for summary judgment.

### B.  Plaintiffs Have Failed to Develop Evidence that the KIND Products Do Not Meet Dr. Dennis's Definitions

Even if we were to accept the argument that Dr. Dennis's report established a reasonable consumer's understanding of the "All Natural" representation, plaintiffs' claims would still not survive the motion for summary judgment for the independent reason that plaintiffs have not shown that any KIND product claiming to be "All Natural" contains "artificial or synthetic" ingredients or any of the chemicals Dr. Dennis listed.

#### 1.  Dr. Toutov's Report Is Not Admissible

Plaintiffs rely on the expert report of Dr. Anton Toutov to analyze the ingredients in the KIND products to determine if they were consistent with an "All Natural" claim.  ECF No. 260-1 ("Toutov Rpt.").  Where Dr. Dennis's survey purported to determine how consumers understood the "All Natural" claim, Dr. Toutov's report was intended to evaluate "whether-scientifically and on a molecular level-[the KIND products] are in fact 'All Natural.'" 56.1 ¶ 68.  Dr. Toutov "concluded the Products' labeling was actually false because many of the ingredients could not be accurately characterized as 'natural' as a matter of organic chemistry, using a framework culled from the applicable scholarly literature and regulations."  Id. (citing Toutov Rpt. ¶¶ 11-15)

40

(emphasis in original).   Defendant challenges Dr. Toutov's expertise and the relevance and reliability of his report.

Dr. Toutov holds a Ph.D. in organic chemistry from the California Institute of Technology, and has worked in the field of organic chemistry at high levels.   Toutov Rpt. ¶ 5.   Based on his education and experience, we find him qualified as an expert in organic chemistry.   To undertake his inquiry in this case, Dr. Toutov examined the ingredient lists of the challenged KIND products and determined whether the listed ingredients satisfied his "elements of naturalness" framework, examining their "origin," "production/processing," and "final form."   Id. ¶¶ 31-34.   This "elements of naturalness" framework was created by Dr. Toutov, because "[t]here is no universal definition of naturalness accepted by all stakeholders involved in the sourcing, manufacturing, selling, and consuming of food products."   Id. ¶ 14.   Dr. Toutov did not perform any analysis of the specific form of the ingredients contained in KIND products (e.g., he looked generally at glucose but did not consider what type of glucose was in KIND products) or any chemical analysis of any KIND product - instead, he reviewed the ingredient lists and provided a report on the listed ingredients.

We find that Dr. Toutov's report is not admissible because it is irrelevant to the issues in this case and cannot assist the trier of fact.   As plaintiffs state, "plaintiffs' theory of the

case is that these ingredients [in KIND products] <u>are not</u> within a reasonable consumer's definition of "All Natural."  Opp. at 5-6 (emphasis in original).   But Dr. Toutov's opinions about whether an ingredient satisfies his "elements of naturalness" bear no relationship to a reasonable consumer's definition of "All Natural."   Dr. Toutov is clear that he did not consider a reasonable consumer's understanding of "All Natural" in writing his report.  <u>See</u> ECF No. 259-10 ("Toutov Tr.") 56:20-24 ("Q. So as part of distilling all of this information into a framework, what role did what consumers think all natural or natural needs have in that framework that you have created?  A. Oh. None.").  Moreover, Dr. Toutov's report does not apply or reference Dr. Dennis's definitions.   In fact, Dr. Toutov stated he disagreed with Dr. Dennis's definitions:

> Q. Is a proper definition of natural that a product contains no artificial or synthetic ingredients?
> A. I think that that is a component of naturalness, but the evaluation of naturalness is more complex than that and requires additional steps. . . .

<u>Id.</u> 60:16-22.

> Q. Is a proper definition of natural that a product does not contain the chemicals phosphoric acid, hexane, potassium hydroxide, and ascorbic acid?
> A. Not necessarily. A much more -- a much more complex review and understanding of the entire situation would need to be undertaken, but, of course, additives and other elements like you mentioned in perhaps your first question, they are a factor and it needs to be taken as a whole.

Id. 61:14-25.  As such, Dr. Toutov's report cannot the answer the question that plaintiffs have provided his report to answer: whether the ingredients in the KIND products are not within a reasonable consumer's definition of "All Natural."[27]

Not only does Dr. Toutov apply an irrelevant standard, but large portions of his report apply that standard to irrelevant ingredients.  Dr. Toutov never conducted any chemical analysis of KIND products to test for non-natural ingredients.  Instead, much of Dr. Toutov's report considers what typically - and, on occasion, atypically - occurs in producing the ingredients listed as ingredients in KIND products, without considering whether the ingredients KIND sources actually were produced by that typical process.  For example, Dr. Toutov considers in determining that canola oil is not "all natural" that "[i]n 2012, over 90% of all canola crops were genetically engineered," Toutov Rpt. ¶ 52, even

---

[27]    Dr. Toutov does identify three ingredients in KIND products as "artificial" or "synthetic" in his report: D-Alpha Tocopherol Acetate/Vitamin E acetate; ascorbic acid (Vitamin C); and Vitamin A acetate.  Toutov Rpt. ¶¶ 113, 115, 118, 121, 123.  These ingredients are only present in KIND Plus Antioxidants bars.  56.1 ¶¶ 70, 73.  As indicated in its name, the KIND Plus Antioxidants bar displays prominently on the front of the packaging that it is a KIND bar "plus" "50% DV Antioxidants," namely, "Vitamins A, C, and E."  56.1 ¶ 8.  As such, no reasonable consumer could have been deceived by the addition of added vitamins.  See Hairston v. S. Beach Beverage Co., Inc., No. 12-cv-1429 (JFW (DTBx) 2012 WL 1893818 at *5 (C.D. Cal. May 18, 2012) (holding "no reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins are suppose[d] to be 'all natural vitamins.'") Further, even if there were doubt about how a consumer may read the label, that doubt is resolved by the claim that the bar contains "50% DV Antioxidants Vitamins A, C, and E."  No reasonable consumer could believe that they would receive 50% of their daily value of vitamins from a single bar without an artificial or synthetic vitamin being added to the product.

though he admits "at least some of the canola oil that is sourced by KIND is non-GMO," id. ¶ 55; see also id. ¶ 86 (noting that genetically modified corn is a "common" starting material for glucose syrup, but failing to consider whether KIND's syrup is derived from genetically modified corn). Similarly, Dr. Toutov notes in his description of the process of making palm oil that "[o]ccasionally, a water solution of ethylene diamine tetracetic acid (EDTA) is added to the hot oil during processing to remove trace metal impurities." Id. ¶ 57.[28] Without evidence that this process was used in making KIND products, it is plainly irrelevant. See In re KIND LLC "Healthy & All Natural" Litig., 209 F. Supp. 3d 689, 698 (S.D.N.Y. 2016) (holding "[p]laintiffs' allegations that approximately 90% of the canola, 89% of corn, and 94% of soybeans grown in the United States are genetically modified are insufficient without being tied to the KIND products purchased by [p]laintiffs.") (internal quotation marks omitted). Thus, where Dr. Toutov relies on the typical or usual source of an ingredient, and not the source actually used in KIND products, his opinion has no relevance to this case. As such, Dr. Toutov's opinions cannot assist the trier of fact, and we grant KIND's motion to preclude his testimony and report.

---

[28]    Dr. Toutov's attempts to sensationalize certain chemicals by explanation of the potential applications of these chemicals in other contexts or the impact of these materials if ingested at high concentrations, which plaintiffs do not claim are present in KIND bars, only detract from any reliability of his report.

## C.   The Motion to Decertify the Class is Granted

Finally, defendant has moved to decertify the class.  "[T]he district court has the affirmative duty of monitoring its class decisions." Mazzei v. Money Store, 829 F.3d 260, 266 (2d Cir. 2016) (quotation marks and citation omitted).  A court must "'reassess . . . class rulings as the case develops'" in order to "ensure continued compliance with Rule 23's requirements." Amara v. CIGNA Corp., 775 F.3d 510, 520 (2d Cir. 2014) (quoting Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999)). "[A]ctual, not presumed, conformance with Rule 23[ ] remains . . . indispensable" to the continued maintenance of a class action. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982). Consequently, a "district court may—and should—decertify a class when the standards of Rule 23 have not been met." Wu v. Pearson Educ. Inc., 2012 WL 6681701, at *5 (S.D.N.Y. Dec. 21, 2012). "Any fact that develops or comes to light between the certification decision and entry of final judgment that calls into serious question the satisfaction of any of the requirements of Rule 23(a) or (b) . . . will justify immediate decertification or revision of the class."  1 Joseph M. McLaughlin, McLaughlin on Class Actions § 3:6 (18th ed. 2021).

Now that plaintiffs have abandoned their "Non GMO" claim and completed discovery, it is clear that they cannot demonstrate that "the questions of law or fact common to class members predominate

over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3).  In certifying the classes, Judge Pauley found this consideration was satisfied because the "All Natural" and "Non GMO" claims were subject to a common proof: namely, if a challenged product contained a GMO, it would fail to be "All Natural."  As Judge Pauley explained:

> [N]one of the labels displayed "All Natural" on its own.  Rather, KIND coupled "All Natural" with "Non-GMO."  Finally, whether "All Natural" and "Non-GMO" labels on a product are accurate is a binary question: either it's true or it isn't.  And importantly, the answer to this question will be the same for each of the named Plaintiffs and every person who purchased a KIND bar during the class period.  As such, while there is variance in the labels at issue, common questions as to whether these labels are deceptive predominate.

In re Kind LLC "Healthy & All Natural" Litig., 337 F.R.D. 581, 599-600 (S.D.N.Y. 2021) (internal citation omitted).  However, plaintiffs' decision to abandon their "Non GMO" claims eliminates this theory of common proof.  Moreover, for the reasons set out above, plaintiffs have failed to articulate an alternative definition of "All Natural" that is held by reasonable consumers. Instead, plaintiffs have demonstrated that they each hold a different theory as as to why they were deceived.  As such, common

questions of law or fact no longer predominate.   We therefore decertify the classes.[29]

IV.  **Conclusion**

For the foregoing reasons, defendant's motion for summary judgment is granted, defendant's motions to disqualify the opinions of Dr. Dennis and Dr. Toutov are granted, defendant's motion to decertify the classes is granted, and the remaining motions are denied as moot.[30]

The Clerk of Court is respectfully directed to terminate the pending motions and close the case.

**SO ORDERED.**

Dated:    New York, New York
          September 9, 2022

                              _____
                                   NAOMI REICE BUCHWALD
                              UNITED STATES DISTRICT JUDGE

---

[29]    Moreover, to the extent that Judge Pauley included labels that did not display an "All Natural" claim (i.e., only displayed "Non GMO" and/or "No Genetically Engineered Ingredients") in certifying the classes, these "subclasses" are considered voluntarily dismissed.

[30]    Because plaintiffs cannot satisfy the first hurdle, we do not reach the issues of materiality or injury.  Accordingly, the motions to disqualify Dr. Hamilton, plaintiffs' expert regarding economic injury, is denied as moot. Likewise, because we did not need to rely on defendant's experts, Dr. Kivetz and Dr. Hutt, to reach this conclusion, we also deny the motion to disqualify these experts as moot.